The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:** May 1, 2023

**EL PASO ELECTRIC COMPANY,**

Appellant,

v.

NO. S-1-SC-38874

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

Appellee,

and

**YELLOW BIRD SERVICES, LLC,**
**DOÑA ANA COUNTY, and**
**THE OFFICE OF THE NEW MEXICO**
**ATTORNEY GENERAL,**

Intervenors-Appellees,

**CONSOLIDATED WITH**

**CITY OF LAS CRUCES,**

Appellant,

v.

NO. S-1-SC-38911

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

Appellee.

**In the Matter of the Application of El Paso**
**Electric Company for Revision of Its Retail**
**Electric Rates Pursuant to Advice Notice No. 267,**

**New Mexico Public Regulation Commission**
**Case No. 20-00104-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Montgomery & Andrews, PA
Jeffrey J. Wechsler
Kari E. Olson
Santa Fe, NM

El Paso Electric Company
Nancy B. Burns
Jordan Kessler
Santa Fe, NM

for Appellant El Paso Electric Company

Russell R. Fisk, Associate General Counsel
Santa Fe, NM

for Appellee

Stevens Law, LLC
Anastasia S. Stevens
Santa Fe, NM

Jennifer Vega-Brown, City Attorney
Robert A. Cabello, Deputy City Attorney
Las Cruces, NM

for Appellant City of Las Cruces

Jason Marks Law, LLC
Jason A. Marks
Albuquerque, NM

for Intervenor-Appellee Yellowbird Services, LLC

Stelzner, Winter, Warburton, Flores, Sanchez, Dawes, P.A.
Keith W. Herrmann
Nann M. Winter
Albuquerque, NM

Nelson J. Goodin, Doña Ana County Counsel
Frederick D. Kennon, Doña Ana County Counsel
Las Cruces, NM

for Intervenor-Appellee Doña Ana County

Hector H. Balderas, Attorney General
Gideon Elliot, Assistant Attorney General
Keven Gedko, Assistant Attorney General
Santa Fe, NM

for Intervenor-Appellee The Office of the New Mexico Attorney General

# DECISION

**VARGAS, Justice.**

{1}     El Paso Electric Company (EPE) appeals from the New Mexico Public Regulation Commission's (PRC's) order on EPE's 2020 Application for Revision of Retail Electric Rates. EPE challenges the order on ten separate grounds that fall into three categories of asserted error: (1) the order improperly denied EPE's recovery of its cost of service, (2) the order improperly determined EPE's cost of capital, and (3) the order deprived EPE of its right to due process. Having reviewed the pleadings, the extensive record, and heard oral argument, we conclude that four of EPE's due process arguments have merit, of which three provide a basis for

appellate relief. Because we find error, we vacate and annul the order and remand for further proceedings. *See* NMSA 1978, § 62-11-5 (1982) ("The supreme court shall have no power to modify the action or order appealed from, but shall either affirm or annul and vacate the same."); *see also Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 1993-NMSC-032, ¶ 6, 115 N.M. 678, 858 P.2d 54 ("Following remand to the Commission, the Commission may properly enter an order embodying those provisions in the earlier vacated order that have been declared reasonable and lawful.").

{2}     We exercise our discretion to dispose of this appeal by nonprecedential decision. *See* Rule 12-405(B) NMRA (providing that a case may be disposed of by nonprecedential decision when, for example, "[t]he issues have been previously decided by the Supreme Court"). We therefore assume the parties' familiarity with the record and summarize the proceedings below only to the extent necessary to explain our reasoning. We summarily affirm on all grounds other than those expressly discussed in this decision.

**I.     DISCUSSION**

{3}     We agree with EPE that the PRC violated due process by denying or disallowing four requests made by EPE in its rate application: (1) to include in rate base expenses for major plant additions after the 2019 base period, (2) to include in

4

rate base lease prepayments made years before the 2019 base period, (3) to approve a proposed reconciliation of adjustment clause costs and revenues for 2017, 2018, and 2019, and (4) to include in EPE's capital structure an equity infusion that was made nine months after the end of the base period.

{4}     "[I]t is well settled that the fundamental requirements of due process in an administrative context are reasonable notice and opportunity to be heard and present any claim or defense." *TW Telecom of N.M., LLC v. N.M. Pub. Regul. Comm'n*, 2011-NMSC-029, ¶ 17, 150 N.M. 12, 256 P.3d 24 (emphasis, internal quotation marks, and citation omitted). As a result, "regulatory treatment which radically departs from past practice without proper notice will not be sustained." *Hobbs Gas Co.*, 1993-NMSC-032, ¶ 7 (internal quotation marks and citation omitted). For notice to be sufficient there must be a "meaningful" opportunity to respond. *See TW Telecom*, 2011-NMSC-029, ¶ 17 ("The opportunity to be heard should be at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)). "The constitutionality of the PRC's rulings present this Court with a question of law, which we review de novo." *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regul. Comm'n*, 2010-NMSC-013, ¶ 19, 148 N.M. 21, 229 P.3d 494.

{5} In addition to the constitutional elements of due process, the Legislature has added a statutory requirement: "the commission may change its past practices or procedures, provided that substantial evidence on the record justifies such a change." NMSA 1978, § 62-6-14(C) (2009); *see also, e.g.*, *Mountain States Tel. & Tel. Co. v. N.M. State Corp. Comm'n*, 1986-NMSC-019, ¶ 26, 104 N.M. 36, 715 P.2d 1332 (holding that a change in how state income taxes are calculated was not arbitrary or capricious when the utility had prior notice and the record showed a reasonable justification for the change). We also may annul and vacate an order of the PRC when its decision is arbitrary and capricious, outside the scope of the agency's authority, or otherwise inconsistent with law. *Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n* (*PNM*), 2019-NMSC-012, ¶ 12, 444 P.3d 460.

## A. Exclusion of Major Plant Additions From Rate Base

{6} We begin with EPE's argument that the PRC violated due process by relying on a "new accounting requirement" to disallow an adjustment to EPE's rate base, contrary to the PRC's allowance of a similar adjustment in EPE's last rate case. *See In re Application of El Paso Elec. Co.* (*2015 EPE Rate Case*), Case No. 15-00127-UT, ¶¶ 180, 189 (NMPRC June 8, 2016) (allowing a $40.6 million adjustment for a new facility that entered service after the end of the test-year period). In this case, EPE requested approximately $4.2 million in rate base for post test year period (post-

TYP) adjustments for "major plant additions . . . closed to plant in service," during the three months immediately following the 2019 base period. The hearing examiner recommended excluding the adjustments because EPE had included only major plant *additions* for the three-month period and had not "synchronize[d] *all* plant-related balances" for that period. (Emphasis added.) The PRC agreed with the hearing examiner's reasoning and adopted the recommendation to exclude the entirety of the proposed $4.2 million adjustment.

{7}     On appeal, EPE argues that the requirement to synchronize all expenses was a departure from past practice and was adopted without notice and a reasonable justification in the record. The City of Las Cruces[1] concedes that the PRC did not require synchronization when it approved "EPE's post-test period capital additions" in EPE's 2015 rate case. However, the City argues that the requirement was supported by an intervening rate case involving another utility, Southwestern Public

---

[1]We granted the PRC's motion to consolidate EPE's appeal with the City's cross-appeal from the same order. Order, *El Paso Elec. Co. v. N.M. Pub. Regul. Comm'n*, S-1-SC-38874 (N.M. Aug. 17, 2021) (granting the motion to consolidate S-1-SC-38874 and -38891). We later dismissed the City's cross-appeal as moot. Dispositional Order of Dismissal, *id.* (N.M. Sept. 26, 2022) (dismissing S-1-SC-38911). Although the City is no longer an appellant in this proceeding and has not moved to intervene in EPE's appeal, we recognize the City's right to intervene and, under the circumstances, treat the City as an intervenor-appellee for purposes of this decision. *See* Rule 12-601(D)(1) NMRA (providing that a party to an adjudicatory proceeding may move to intervene as of right in an appeal from that proceeding).

Service Company (SPS). *See In re Application of Southwestern Pub. Serv. Co.* (*SPS Rate Case*), Case No. 17-00255-UT (NMPRC Sept. 5, 2018) In that case, the hearing examiner recommended including in rate base "plant placed into service" during the five months immediately after SPS's base period. Recommended Decision, *id.* at 117-18 (June 29, 2018). The SPS hearing examiner reasoned that "[w]hile SPS did not fully synchronize all cost of service elements to match the . . . balance for plant-in-service, it did synchronize all plant-related balances, which the Commission has indicated is *sufficient* when including post TYP plant in rate base." *Id.* at 118 (emphasis added). In this case, both the hearing examiner and the PRC agreed that, under the "recent precedent" of the SPS rate case, EPE's request to include $4.2 million for major plant additions "should be denied because EPE did not synchronize all plant-related balances to March 31, 2020."

{8}     Reliance on the SPS rate case is misplaced. That case does not stand for the proposition—and therefore does not provide notice or justification—that post-TYP adjustments for additions to plant will be excluded unless all plant-based balances are synchronized. Put simply, reasoning that a practice is *sufficient* falls short of announcing that the practice is *required*, whether in the SPS rate case itself or in any future case. Thus, the SPS rate case does not meaningfully alter the PRC's past practice of allowing post-TYP plant additions without concern for synchronization.

*See 2015 EPE Rate Case*, No. 15-00127-UT, ¶ 189 (refusing to "depart from [the PRC's] practice of allowing into rate base capital projects completed within five months of the end of the test period and before the filing of a rate case").

{9} Similarly, neither the testimony nor the evidence in this case provided notice or justification for requiring synchronization as a condition of including post-TYP additions to plant in rate base. As noted by the hearing examiner, AG-witness Crane and EPE-witness Hancock testified on the issue of EPE's post-TYP adjustments for major plant additions. In prefiled testimony, Ms. Crane said nothing about synchronization and even recommended including the post-TYP additions in rate base because similar additions had been approved in EPE's 2015 rate case. Similarly, nothing in Mr. Hancock's cross-examination suggested that plant additions should be excluded unless all plant-based balances were synchronized. The parties have provided no other citations to the record to support the synchronization requirement applied in this case.

{10} The City argues that EPE had sufficient notice and opportunity to respond *after* the hearing, both in posthearing briefing and in EPE's exceptions to the recommended decision. That argument is partially contradicted by the record. The issue of synchronization is absent from the posthearing briefing and appears to have been raised for the first time by the hearing examiner in the recommended decision.

And while EPE filed an exception to the recommended decision on this issue, the City cites no authority that such a late opportunity to object—well after the close of evidence—is sufficient to satisfy due process under these circumstances. *Contra, e.g.*, *Mountain States*, 1986-NMSC-019, ¶ 26 (holding that the utility had sufficient notice of a potential change in methodology based on (1) prefiled testimony from staff and intervenor witnesses proposing to change the method, (2) the utility's rebuttal testimony opposing the change, and (3) the utility's further testimony at the hearings). Indeed, the opposite seems true, particularly when the entire $4.2 million was excluded without affording EPE an opportunity to submit evidence to support, for example, a synchronized adjustment amount. *See TW Telecom*, 2011-NMSC-029, ¶ 17 ("The opportunity to be heard should be at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)); *see also 2015 EPE Rate Case*, No. 15-00127-UT, ¶¶ 181, 189 (noting that EPE agreed to reduce its post-TYP adjustment by $50,000 to account for evidence of fuel cost savings associated with the new facility).

{11}     In sum, the exclusion from rate base of EPE's requested post-TYP major plant additions violated due process when the PRC approved similar additions in EPE's 2015 rate case without requiring synchronization and when EPE lacked notice that synchronization of all plant-related balances would be required in this instance. *See*

10

*PNM*, 2019-NMSC-012, ¶ 65 ("Because the issue . . . appears to have been first raised by the Commission in its final order, PNM was not afforded an opportunity to be heard on the issue."); c*f. id.* ¶ 65 (holding that the utility was denied due process when the Commission raised an issue for the first time in its final order).

**B. Exclusion of Unamortized Regulatory Assets From Rate Base (Palo Verde Water or Effluent Agreement and Newman Buffer Zone Land Lease)**

{12}    We next address EPE's challenge to the exclusion of two unamortized regulatory assets from rate base as a violation of due process. The PRC excluded from rate base unamortized portions of prepayments that EPE made (1) in 2008 and 2009 to lease land around the Newman Power Plant, and (2) in 2010 through 2013 to purchase effluent cooling water for the Palo Verde Nuclear Generating Station. The hearing examiner recommended excluding the prepayments because EPE had failed to provide "any evidence that the prepayment[s] benefit[] ratepayers." The examiner derived that rule from the following language from a PRC order approving a stipulation in a 2010 rate case involving another utility, Public Service Company of New Mexico (PNM):

> [T]he Commission has generally required that utilities proposing to prepay expenses must show by a cost-benefit analysis or other evidence that the prepayment benefits ratepayers. PNM has failed to provide any such evidence and has failed to meet its burden to justify this cost.

*In re Application of Pub. Serv. Co. of N.M.* (*2010 PNM Rate Case*), Case No. 10-00086-UT, ¶ 109 (NMPRC July 28, 2011). The PRC adopted the hearing examiner's recommendation on this issue, expressly noting that the hearing examiner had "correctly applied Commission precedent."

{13}    On appeal, EPE argues that (1) the requirement to provide evidence that the prepayments benefit ratepayers is "a new evidentiary burden" that violated EPE's right to notice and an opportunity to respond, (2) EPE actually introduced evidence that the prepayments benefit ratepayers, and (3) the hearing examiner's reliance on the 2010 PNM order was contrary to the PRC's own regulations. We agree that the prepayments were excluded in violation of EPE's right to due process.

{14}    Based on our review of the record, it once again appears that the hearing examiner invoked an unannounced, unargued evidentiary requirement sua sponte in the recommended decision, without giving EPE an opportunity to introduce evidence to meet the requirement. Indeed, neither EPE nor the City mentioned the 2010 PNM order or its purported evidentiary requirement in their posthearing briefing on this issue. EPE argued only that rate base treatment for the prepayments was "not contested and should be approved." And while the City argued to exclude the prepayments for a variety of reasons, it did not cite the 2010 PNM order or argue that EPE had failed to demonstrate that the prepayments benefit ratepayers.

12

Nonetheless, the hearing examiner cited EPE's failure to satisfy "the precedent from the *2010 PNM Rate Case*" as the sole basis to deny EPE's requests. Therefore, EPE is correct that it lacked notice of the standard that would be applied on this issue and an opportunity to introduce evidence to meet that standard. *See TW Telecom*, 2011-NMSC-029, ¶ 17 ("[T]he fundamental requirements of due process in an administrative context are reasonable notice and opportunity to be heard and present any claim or defense." (italics, internal quotation marks, and citation omitted)).

{15} The City contends on appeal that "EPE should have known of the Commission's decade-old precedential standard on prepayments before it requested rate base inclusion of . . . prepayment costs, and should have addressed the appropriate standard for recovery in its case in chief." That argument actually implicates a second problem with the PRC's ruling on this issue. The PRC's own regulations provide that an order approving a stipulation "does not constitute commission approval of or precedent regarding any principle or issue in the proceeding." 1.2.2.20(D) NMAC. Therefore, sole reliance on the PNM order as "precedent" to exclude the prepayments violates the PRC's own regulation and thus was unlawful. *See, e.g.*, *Miller v. City of Albuquerque*, 1976-NMSC-052, ¶ 20, 89 N.M. 503, 554 P.2d 665 (holding that the City's Environmental Planning Commission's "failure to comply with its own published procedures was fatal to [its]

13

decision"); I Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise* § 7.1, at 728 (6th ed. 2019) ("Once an agency adopts a set of procedures by rule, the agency must comply with its own procedural rules even if the procedures adopted by the agency exceed those independently required by the Due Process Clause."). Moreover, EPE can hardly be charged with notice of a "decade-old precedential standard" when the only source in the record of such a standard is a *non*precedential order directed at another utility. Under these circumstances, exclusion of the prepayments violated EPE's right to due process.

**C.      Refusal to Approve EPE's Reconciliation of Its Adjustment Clause Costs and Revenues for 2017 Through 2019**

{16}      We next consider EPE's argument that the PRC's refusal to approve its proposed reconciliation of costs and revenues resulting from its fuel and purchased power cost adjustment clause (FPPCAC or adjustment clause) violated due process. As described by the hearing examiner, EPE submitted for approval "a three-page document that shows, for each of 2017, 2018, and 2019, amounts that EPE included in, and recovered through, its FPPCAC." EPE submitted the proposed reconciliation in reliance on the PRC's approval of similar reconciliations in EPE's previous cases. The hearing examiner recommended denying the request because, unlike in EPE's 2009, 2015, and 2018 cases, no staff or intervenor witness "filed testimony addressing EPE's request that the Commission approve EPE's reconciliation of its

14

FPPCAC costs and revenues for 2017 through 2019." The PRC adopted the hearing examiner's recommendation, explicitly agreeing that the absence of staff- or intervenor-witness testimony was dispositive.

{17}     We agree with EPE that the requirement for testimony by a staff or intervenor witness was arbitrary and capricious and imposed without notice or a reasonable justification. Although approval of the reconciliation was the subject of extensive litigation before, during, and after the hearing, the rationale for refusing to approve the reconciliation is problematic, as was the timing for announcing that rationale. In a manner that may seem familiar by now, the hearing examiner raised the requirement for staff- or intervenor-witness testimony sua sponte in the recommended decision, after EPE's opportunity to introduce evidence to meet the requirement had passed.[2] And once again, no party argued before issuance of the recommended decision that the lack of such testimony should be dispositive. Thus, the hearing examiner raised and relied on the requirement without notice and an

---

[2]We note that the hearing examiner confirmed at the beginning of day five of the evidentiary hearing that PRC staff had not submitted prefiled testimony on the subject of EPE's requested reconciliation. This isolated inquiry was insufficient to put EPE on notice that the PRC would rely on the absence of such testimony to refuse approval of the proposed reconciliation.

15

opportunity to respond, contrary to the PRC's previous approvals of EPE's adjustment clause reconciliations in its 2009, 2015, and 2018 cases.[3]

{18} The requirement also is arbitrary and capricious in that it does not address the hearing examiner's apparent concern about the ambiguous meaning and effect of approving the reconciliation. The hearing examiner was clearly troubled that, other than past practice in EPE's prior cases, EPE had not provided authority in law or regulation for the PRC to consider or approve an adjustment clause reconciliation, to identify what standard should govern such an approval, or most importantly, to clarify what the effect of such an approval would be. Given these significant, unanswered questions, the hearing examiner's abrupt pivot to the absence of staff- or intervenor-witness testimony is inexplicable. Requiring a staff or intervenor witness to "review[] EPE's reports and recommend[] approval of EPE's reconciliations" would not clarify the meaning or effect of the approval any more than such testimony did in EPE's 2009, 2015, and 2018 cases. Refusing to approve the reconciliation due to EPE's failure to satisfy a previously unidentified, arbitrary and capricious requirement does not withstand constitutional scrutiny.

---

[3]The parties do not question whether approval of EPE's reconciliation amounts to a property right that is protected by due process. We therefore assume without deciding that past practice is sufficient to create a due process right and analyze the issue accordingly.

**D.      Exclusion of Known and Measurable Equity Infusion From Test-Year Period**

{19}    We last consider EPE's challenge to the PRC's articulation and application of a new "six-month rule" to exclude a change to EPE's capital structure that was made nine months after the end of the base period. Although we defer to the PRC's broad discretion to impute a capital structure for the purpose of setting rates, we write to clarify that any purported reliance on a six-month rule in this case violated due process.

{20}    The hearing examiner recommended a 51% equity ratio to reflect a $125 million equity infusion made by EPE's parent company nine months after the end of the base period. The hearing examiner noted that in the 2010 PNM rate case, the PRC had approved a known and measurable change to PNM's capital structure approximately six months after the end of the base period. The examiner also reasoned that a "51% equity ratio [was] within the range of equity ratios" approved by the PRC in other similar rate cases going back at least to 2010. The PRC disagreed and instead approved a 49.21% equity ratio to reflect EPE's actual ratio at the end of the base period.

{21}    The PRC provided two rationales to explain the reduction. To start, the PRC found that a 49.21% equity ratio is "a better policy choice as an imputed capital structure." That rationale is supported by law and by the record in this case, including

17

testimony by City-witness Garrett who recommended, based on the capital structures of similarly situated utilities, "apply[ing] a capital structure consisting of a 51% debt and 49% equity for purposes of computing [EPE's] awarded rate of return." *See, e.g.*, *In re Zia Nat. Gas Co. v. N.M. Pub. Util. Comm'n*, 2000-NMSC-011, ¶ 8, 128 N.M. 728, 998 P.2d 564 ("Our cases have all but explicitly accepted the imputation of a capital structure to a utility company in rate making."); *see also id.* ¶ 7 ("In rate making, the Commission may set rates based on an optimum, or at least an average, capital structure."). We therefore do not disturb the PRC's policy choice to impute a 49.21% equity ratio.

{22} Despite the PRC's clear authority to impute a capital structure, it nonetheless provided a second rationale for reducing the hearing examiner's recommended 51% equity ratio that went beyond the evidence and argument presented in this case. To wit, the PRC announced in the final order that "six months after the base period end is a reasonable cut-off point for including known and measurable changes to capital structure to maintain a reasonable relationship between the base period and the test-year period." Therefore, "at nearly nine months after the end of the base period, the infusion is too remote from the base period to be included in the test-year period."

{23} We agree with EPE that the PRC's adoption of a new six-month rule in the final order violated due process, when no party presented evidence or argued in favor

of such a rule at any point in the proceedings. *See PNM*, 2019-NMSC-012, ¶ 65 ("Because the issue . . . appears to have been first raised by the Commission in its final order, PNM was not afforded an opportunity to be heard on the issue."). We further agree that adopting the rule in this case was contrary to past practice and not supported by the record. *See* § 62-6-14(C) ("[T]he commission may change its past practices or procedures, provided that substantial evidence on the record justifies such a change."). Indeed, EPE cites a recent case in which the PRC allowed a known and measurable change made more than *sixteen months* after the end of the base period, an allowance that undermines the PRC's sua sponte adoption of a reflexive six-month rule in this case. *See In re EPCOR Water N.M. Inc.*, Case No. 18-00124-UT, ¶ 12 (NMPRC July 17, 2019). Although we do not disturb the PRC's approval of an imputed capital structure, we expressly disapprove of the adoption of a six-month rule under the record in this case.

## II.  CONCLUSION

{24}  Finding no other error, we annul and vacate the order and remand for further proceedings consistent with this decision.

{25}  **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Justice**

19

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**BRIANA H. ZAMORA, Justice**